IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**PERNELL SAULSBERRY,**

       **Plaintiff,**

v.                                                           Case 2:11-cv-02581-AJT-cgc

**FEDEX EXPRESS,**

       **Defendant.**

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Before the Court is Defendant, FedEx Express's ("FedEx"), Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry "D.E." #30). The instant motion was referred to the United States Magistrate Judge for Report & Recommendation. (D.E. #40). For the reasons set forth herein, the Magistrate Judge RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED.

**I. Introduction**

      On June 10, 2011, Plaintiff Pernell Saulsberry filed a Complaint in Shelby County, Tennessee alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family Medical Leave Act ("FMLA"), and the Tennessee Human Rights Act ("THRA"). Specifically, Plaintiff alleges that he was subjected to a hostile work environment (Count I), experienced racial discrimination (Count II), and was not permitted to take leave pursuant to FMLA (Count III). Defendant's instant motion seeks summary judgment on all counts.

1

## II. Proposed Findings of Fact

Plaintiff is employed part-time by FedEx at the OLVA station located in Memphis, Tennessee. (Mot. for Summ. J, Exh. A ("Mudd Decl.") ¶ 6; Mot. for Summ. J., Exh. B ("Pl.'s Dep.") at 25-26). Plaintiff's job duties include loading and unloading packages, documents, and dangerous goods from aircraft containers. (Mudd Decl. ¶ 7). FedEx contends that Plaintiff's position is classified as a Handler DOT, which additionally requires the occasional operation of FedEx road-licensed vehicles. (Mudd Decl. ¶¶ 6, 8; Pl.'s Dep. at 27 & Exh. 2).[1] There is no dispute that a Handler DOT is required by federal regulations to meet certain qualifications and pass a medical examination. (Pl.'s Dep. at 27-28 & Exh. 2; Mudd Decl. ¶ 9).

Plaintiff admits that he is recorded in the FedEx system as a Handler DOT. (Pl.'s Dep. at 75, 78). During the course of his employment, Plaintiff was occasionally assigned to driving FedEx vehicles. (Mot. for Summ. J., Exh. D ("Stansfield Declaration") ¶ 4). Plaintiff admits that he has driven a FedEx vehicle off of the property and has submitted to medical examinations as part of his duties as a Handler. (Pl.'s Dep. at 25). Yet Plaintiff maintains that he is not a Handler DOT[2] because he "never signed an offer letter for a job titled Handler DOT." (Pl.'s Dep. at 26, 78).[3] Even

---

[1] FedEx's job description for a Handler DOT's use of transportation vehicles as follows: "On an emergency basis, performs pickup/delivery of packages. This function cannot comprise the majority of time worked on any given day. In addition, may occasionally operate non-articulated vehicles, but this cannot be the primary focus of the job, nor should it comprise the majority of time worked on any given day." (Pl.'s Dep., Exh. 2).

[2] While Plaintiff asserts that he is actually employed as a Handler NON DOT and attempts to distinguish between a Handler DOT and a Handler NON DOT, Plaintiff has not provided any evidence that FedEx has a job classification of Handler NON DOT. Thus, the Court has no evidence that such a position even exists within FedEx's corporate structure.

[3] Plaintiff additionally claims that he is not a Handler DOT because FedEx's Answer, filed on July 19, 2011, admits Plaintiff's allegation that he is a Handler NON DOT. (Answer ¶ 8). However, FedEx filed its Amended Answer on April 18, 2012 averring that Plaintiff is a

so, Plaintiff admits that he is not aware of any FedEx policy for job classification that requires such a procedure. (Pl.'s Dep. at 24).

Upon review of the evidence in the record, the Magistrate Judge recommends that the District Court find that Plaintiff has not raised a genuine issue of material fact as to whether he was employed as a Handler DOT. Plaintiff admits that he was recorded as such in the FedEx system, admits that he occasionally drove FedEx vehicles requiring DOT certification as part of his job duties, and admits that he periodically underwent medical examinations as part of his DOT certification. Although Plaintiff did not operate DOT vehicles frequently, the job description for Handler-DOT states that a Handler performs such duties only on an emergency basis, not as a primary function, and not for a majority of the work hours. While Plaintiff continues to insist that he should have received and been permitted to sign an offer letter for the Handler DOT position, Plaintiff is not aware of any FedEx policy requiring such action. Accordingly, the Court recommends that the District Court find that Plaintiff is employed by FedEx as a Handler DOT.

As part of his employment, FedEx requires Plaintiff to record his attendance by punching a time card at the beginning and end of his shifts. (Pl.'s Dep. at 29-30). Plaintiff admits that FedEx keeps an accurate accounting and recording of the hours that he works.[4] (Pl.'s Dep. at 35; Pl.'s

---

Handler DOT. (Amend. Answer ¶ 8). While FedEx has clearly amended the record to dispute Plaintiff's allegation, in any event the allegations in the Complaint and Answer are not evidence from which a party may demonstrate a genuine issue of material fact for purposes of summary judgment. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (quoting Fed. R. Civ. P. 56). (concluding that a plaintiff "can no longer rest on the pleadings" at the summary judgment stage).

[4] Plaintiff's deposition briefly disputes the accuracy of FedEx's reporting system. (Pl.'s Dep. at 35). However, because Plaintiff's Response to Defendant's Statement of Material Facts admits to the accuracy of the system, the Court will consider the accuracy of FedEx's attendance records to be undisputed.

Resp. to Def.'s Stmt. of Facts ¶ 9). FedEx is an equal opportunity employer with policies prohibiting discrimination, harassment, and retaliation as set forth in The FedEx Personnel and Procedure Manual ("People Manual"). (Mudd Decl. ¶ 4). FedEx offers an internal grievance procedure known as the Guaranteed Fair Treatment Procedure ("GFTP"), which allows employees to dispute employment decisions, such as Warning Letters, Performance Reminders, or terminations. (Mudd Decl. ¶ 5). Plaintiff has access to the People Manual either online or through his Human Resources representative or a manager. (Pl.'s Dep. at 21).

On June 7, 2010, Plaintiff received a Warning Letter for a serious safety violation from Operations Manager Glynn Forsyth ("Forsyth") because he was observed on May 19, 2010 operating a forklift without wearing his seatbelt. (Pl.'s Dep. at 43 & Exh. 6; Mudd Decl. ¶ 10). There is no dispute that FedEx's Acceptable Conduct Policy provides that a violation of corporate safety regulations, including failure to wear a seatbelt, is a misconduct issue that may result in severe disciplinary action up to and including termination. (Pl.'s Dep. at 44-46 & Exh. 7; Mudd Decl. ¶ 12). Further, Plaintiff admits that he committed the violation. (Pl.'s Dep. at 43-46). The Warning Letter states that it will remain active for twelve months, during which time a job change application may not be submitted and three notifications of deficiency may result in termination. (Pl.'s Dep. at Exh. 6). Plaintiff admits that the Warning Letter did not alter his job title, job responsibilities, pay, or benefits. (Pl.'s Dep. at 47-48; Mudd Decl. ¶ 13). In addition to this incident, Plaintiff had previously been observed by Senior Manager Dean Mudd ("Mudd") operating a forklift without wearing a seatbelt, and Mudd had also addressed that safety violation with Plaintiff at that time. (Pl.'s Dep. at 47; Mudd Decl. ¶ 11).

From December 22, 2010 through December 26, 2010, Plaintiff incurred unscheduled

4

absences from work. (Pl.'s Dep. at 53-54). These absences followed Plaintiff's December 22, 2010 and December 27, 2010 visits to the emergency room for dizziness. (Pl.'s Dep. at 51-53). Plaintiff's physician diagnosed him with a urinary tract infection and vertigo and released him to work with no restrictions. (Pl.'s Dep. at 49, 51-53). On January 17, 2011, Plaintiff incurred another unscheduled absence from work due to his vertigo. (Pl.'s Dep. at 57). On January 20, 2011, Plaintiff requested leave under the Family Medical Leave Act due to his vertigo. (Pl.'s Dep. at 70, 84). Plaintiff was provided with a notice from FedEx that he was not eligible for FMLA leave because he had not worked 1,250 hours in the previous twelve months as required. (Pl.'s Dep. at 84-85 & Exh. 14). Plaintiff's request for FMLA leave was ultimately denied on this ground. (Pl.'s Dep. at 85 & Exh. 14; Mot. for Summ. J., Exh. C ("Catron Decl.") ¶ 6).[5]

While Plaintiff was not eligible for FMLA leave, Plaintiff was instructed after his diagnosis with vertigo to see the FedEx physician on January 20, 2011 for a DOT medical examination. (Pl.'s Dep. at 66). Plaintiff admits that this type of examination was "usually related" to his DOT certification. (Pl.'s Dep. at 66). The medical examiner temporarily disqualified Plaintiff from

---

[5] Plaintiff attempts to dispute that he had worked 1,250 hours during the previous twelve months by filing an "Exhibit FMLA Hours," which purports to be a Federal Express Corporation Employee Monthly Trend Report from 01/2010 to 01/2011. (Pl.'s Resp., Exh. 4). This document lists "HR PAID TOT" as 1,257.29 hours within twelve months. (*Id.*). Upon review, the Court finds that the FMLA Hours exhibit constitutes hearsay under Rule 801 of the Federal Rules of Evidence because it is a statement made out of court offered in court to prove the truth of the matter asserted. Although these records appear to be a type of business record that could be admitted under Rule 803(6), Plaintiff has failed to provide the testimony or certification of these records by the custodian or another qualified witness as required by Rule 803(6)(D). Thus, the Court finds that Plaintiff's FMLA Hours exhibit constitutes inadmissible hearsay that may not be considered for purposes of summary judgment. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). Further, even if this document were to be admissible, FedEx disputes the information contained therein, arguing that this report tracks hours paid, including hours paid while on leave, but it does not track actual hours worked for FMLA purposes. (Def.'s Reply, D.E. #39, at 8).

5

driving FedEx vehicles due to vertigo. (Pl.'s Dep. at 70 & Exh. 12). Plaintiff was required to complete sixty days free of vertigo symptoms before he could be re-certified to drive. (Catron Decl. ¶ 9; Pl.'s Decl. at 90). As a result of the medical examination, Plaintiff was placed on a Temporary Return to Work ("TRW") assignment. (Catron Decl. ¶ 10; Mudd Decl. ¶ 23). Specifically, Plaintiff's "temporary disqualification from driving restricted him from his ability to perform his full job duties as a Handler DOT which included occasional driving" but did not restrict him from "performing the other duties of a Handler including loading and unloading packages." (Catron Decl. ¶ 10). Accordingly, Plaintiff was placed on a TRW assignment that permitted him "to continue to work within his restriction without interruption to his income." (Catron Decl. ¶ 10).

Plaintiff received a letter dated January 26, 2011 that described his TRW assignment. (Pl.'s Dep. at 81 & Exh. 13; Catron Decl. ¶ 11). The letter provided that, per the Fed Ex Temporary Return to Work Policy, Plaintiff would work no more that twenty hours per week with "temporary restrictions of no driving in a DOT capacity." (Pl.'s Dep. at 81 & Exh. 13). The letter instructed Plaintiff to notify the Human Capital Management Program ("HCMP") Advisor, Shelly Catron ("Catron"), if he was asked to perform duties that conflict with his restrictions. (Pl.'s Dep. at 81 & Exh. 13).[6] During the pendency of the TRW assignment, Plaintiff was moved from operating a forklift to solely loading and unloading packages from trucks. (Mudd Decl. ¶¶ 24-25; Pl.'s Dep. at 169, 235; Stansfield Decl. ¶ 4). While DOT certification is not required for the operation of a forklift, Plaintiff was not permitted to continue performing this duty during the TRW period for

---

[6] The January 23, 2011 Letter contains a signature line affirming that the employee has received the information and understands the requirements. (Pl.'s Dep., Exh. 13). Exhibit 13 to the instant motion is not signed by Plaintiff, but Plaintiff admitted in his deposition that he received it. (Pl.'s Dep. at 79-81).

safety reasons. (Pl.'s Dep. at 169; Mudd Decl. ¶ 24; Stansfield Decl. ¶ 4). During the TRW assignment, his job title, pay, and benefits did not change. (Mudd Decl. ¶ 26).

On January 24, 2011, Plaintiff received a Performance Reminder from Operations Manager Robbie Stansfield ("Stansfield") for unsatisfactory attendance because Plaintiff's attendance rate of 94.6% was below the minimum 96.9% required and was in violation of the Attendance Policy. (Pl.'s Dep. at 93, 131-32 & Exhs. 18 & 26; Stansfield Decl. ¶ 6). An employee's attendance rate does not calculate preauthorized or scheduled medical absences or leaves but does include unscheduled absences. (Pl.'s Dep. at 289-90 & Exh. 28; Stansfield Decl. ¶ 10). Plaintiff's attendance rate had fallen below the required rate from his December 22, 2010 to December 26, 2010 and January 17, 2011 unscheduled medical absences, as well as other absences listed in the Performance Reminder that amounted to a total of fourteen days. (Pl.'s Dep. at 49-54, 57, 96 & Exh. 18). Plaintiff had been counseled about these absences on December 29, 2010 but thereafter sustained two further absences on January 17 and 20, 2011, which lead to the issuance of the Performance Reminder. (Pl.'s Dep. at 93-94 & Exh. 18; Stansfield Decl. ¶ 7). Plaintiff admits that he was absent on the fourteen days as listed[7] and that his attendance was below satisfactory on January 24, 2011. (Pl.'s Dep. at 94, 96, 132). Plaintiff's job title, job responsibilities, pay, and benefits did not change as a result of this Performance Reminder. (Pl.'s Dep. at 96-97).

On January 25, 2011, Plaintiff submitted a Personal Performance Agreement to his manager,

---

[7] Plaintiff's Response to Defendant's Statement of Undisputed Facts states that he "disputes that he was off work for the full fourteen days." (Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 49). However, he cites no evidence for this purported dispute, and his deposition testimony admits that he was absent on these days. Thus, the Court finds no genuine dispute of material fact exists as to the number of Plaintiff's absences before the January 24, 2011 Performance Reminder was issued.

which he composed himself without assistance. (Pl.'s Dep. at 98-100 & Exh. 19). Plaintiff stated that he believed that staying under his doctor's care was the best way to resolve his health issues, raise his attendance levels, and become re-certified by DOT regulations. (Pl.'s Dep. at 98-100 & Exh. 19). After formulating this Personal Performance Agreement, Plaintiff appealed his Performance Reminder through FedEx's GFTP process (Pl.'s Dep. at 100). Plaintiff's Performance Reminder was upheld at all three levels of the GFTP process. (Pl.'s Dep. at 130-35).

On March 21, 2011, Plaintiff's physician confirmed that he had no symptoms of vertigo for sixty days and advised that Plaintiff was able to return to his regular duties. (Pl.'s Dep. at 90 & Exh. 16). FedEx cleared Plaintiff to resume any driving duties on March 27, 2011. (Catron Decl. ¶ 13). Once his TRW assignment was complete, Plaintiff was again regularly assigned to operate the forklift. (Stansfield Decl. ¶ 4).

### III. Proposed Conclusions of Law

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn*, 176 F.3d at 927, evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998). "Conclusory statements unadorned with specific facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

### A. Racial Discrimination under Title VII and THRA

First, FedEx asserts that Plaintiff's claims for racial discrimination under Title VII and THRA must fail as a matter of law. To establish a prima facie case of racial discrimination, Plaintiff must demonstrate as follows: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified; and (4) he was treated differently that

9

similarly-situated non-minority employees for the same or similar conduct. *McClain v. NorthWest Community Corrections Center Judicial Corrections* Bd., 440 F.3d 320, 332 (6th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Plaintiff must establish the prima facie case by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 258, 252-53 (1981). Similarly, THRA violations follow the same analysis, as the Tennessee legislature intended the THRA to "provide for execution within Tennessee of the policies embodied in the federal civil rights statutes." *Bredesen v. Tennessee Judicial Selection Commission*, 214 S.W.3d 419, 430 (Tenn. 2007) (quoting *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006)).

An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Hollins v. Atlantic, Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). A materially adverse change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Instead, a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Id.*

### i. June 7, 2010 Warning Letter

Plaintiff asserts that there is a genuine issue of material fact as to whether he was subjected to an adverse employment action on June 7, 2010 when he received a Warning Letter for not wearing his seatbelt while operating a forklift. Plaintiff argues this constitutes an adverse employment action because he was placed on a one-year probationary period. During the probationary period, he was not allowed to apply for a job change, which Plaintiff argues resulted

in him "potentially los[ing] several job opportunities and advancement." (Pl.'s Resp., Declaration of Pernell Saulsberry ("Pl.'s Decl.") ¶ 7; Exh. 6). Plaintiff also relies upon the fact that, during the probationary period, three disciplinary actions would have resulted in termination. (Pl.'s Decl. ¶ 7; Exh. 6). FedEx argues that Plaintiff has not presented sufficient evidence that the June 7, 2010 Warning Letter impacted his employment significantly enough to be deemed an adverse employment action. Specifically, FedEx states that Plaintiff has only speculated that the probationary period impacted his opportunities for advancement and that mere speculation does not create a genuine issue of material fact.

With respect to the probationary prohibition on job change applications, courts have held that "when disciplinary write-ups affect an employee's opportunity for promotion and pay raises, and may place an employee on probation," they constitute an adverse employment action. *Rose v. Buckeye Telesystem, Inc.*, 181 F. Supp. 2d 772, 776 (N.D.Ohio 2001); *see also Duran v. N.M. Dep't of Labor*, 143 F. Supp. 2d 1278, 1285 (D.N.M. 2001) (stating that a disciplinary action "preventing future advancement" could constitute an adverse employment action); *Cunningham v. Kansas City Star Co.*, 995 F. Supp. 1010, 1025 (W.D.Mo. 1998) (stating that disciplinary "write-ups" can constitute adverse employment actions if they adversely affected plaintiff's working conditions by affecting plaintiff's opportunities for promotions). Yet while probationary periods may constitute adverse employment actions, the Sixth Circuit has required "evidence to support any such possibility" that the disciplinary action affected the employees "prospects for advancement." *Lahar v. Oakland County*, 304 Fed. Appx. 354, 357 (6th Cir. 2008). Plaintiff does not offer any such evidence in this case.

With respect to the probationary condition that Plaintiff could be terminated upon three

disciplinary actions, the Sixth Circuit has determined that holding an employee to a higher level of scrutiny following a disciplinary reprimand does not on its own affect an employee's employment in a sufficiently material way to be deemed an adverse employment action. *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 169 (6th Cir. 2004); *see also Craig-Wood v. Time Warner N.Y. Cable, LLC*, No. 2:10-cv-906, 2012 WL 3929819, at *8 (S.D.Ohio Sept. 10, 2012).

Upon review, the parties do not dispute the terms of the probationary period, and they are set forth clearly in the record. Thus, there is no genuine issue of material fact before the Court, and the question is a purely legal one. As the heightened scrutiny during the probationary period cannot constitute an adverse employment action, and as Plaintiff has not provided any evidence to support the possibility that his prospects for advancement were affected by the disciplinary period, the Magistrate Judge RECOMMENDS that Plaintiff's probationary period does not constitute an adverse employment action under Title VII or THRA. Thus, the Court further RECOMMENDS that Plaintiff cannot establish a prima facie case of racial discrimination under Title VII or THRA based upon the June 7, 2010 Warning Letter.

### ii. *January 20, 2011 Temporary Return to Work Assignment*

FedEx asserts that there is no genuine issue of material fact as to whether Plaintiff's January 20, 2011 TRW assignment constitutes an adverse employment action. FedEx asserts that Plaintiff was required as a Handler DOT to submit to a medical examination following his vertigo diagnosis, was temporarily disqualified from driving by a physician, was prohibited from operating a forklift out of safety concerns, and was ultimately re-certified to drive by medical examination after sixty days without vertigo symptoms. FedEx further argues that Plaintiff's job title, pay, and benefits were not altered during the TRW assignment.

The crux of Plaintiff's argument that the TRW assignment constitutes an adverse employment action lies in his contention that he is not employed as a Handler DOT and was not required to submit to a medical examination;[8] however, the Magistrate Judge has already recommended that the District Court find that Plaintiff was employed as a Handler DOT. Further, Plaintiff did not suffer a termination, demotion, decrease in wage, loss of title, material loss of benefits, or significantly diminished material responsibilities; on the contrary, Plaintiff was only temporarily restricted from driving due to his medical condition, Plaintiff readily admits that he did not regularly drive DOT vehicles in the course of his regular duties, and the Handler DOT job description clarifies that such a position only requires infrequent driving on an emergency basis. Additionally, the Magistrate Judge does not believe that there are any other indices unique to this particular situation that raise a genuine issue of material fact as to whether Plaintiff's TRW assignment constituted an adverse employment action. Instead, the TRW assignment is a mere "alteration of job responsibilities" that cannot constitute an adverse employment action. *Hollins*, 188 F.3d at 662. Thus, the Magistrate Judge RECOMMENDS to the District Court that the TRW assignment is not sufficient as a matter of law to constitute an adverse employment action under Title VII or THRA. The Court further RECOMMENDS that Plaintiff cannot establish a prima facie case of racial discrimination under Title VII or THRA based upon the TRW assignment.

### iii. *January 24, 2011 Performance Reminder*

---

[8] Plaintiff also states in his Response that he was required to work more than twenty hours per week, which was a violation of one of the conditions of his TRW, and that he was placed in working conditions that were hazardous to his health. Plaintiff does not cite to any evidence in the record as to either contention. While FedEx's motion briefly refers to portions of Plaintiff's deposition testimony that concern these topics, Plaintiff ultimately bears the burden of establishing the existence of a genuine issue of material fact and has failed to do so.

FedEx claims that Plaintiff's January 24, 2011 Performance Reminder regarding Plaintiff's unsatisfactory attendance cannot constitute an adverse employment action because Plaintiff admits to violating the attendance policy and because there has been no material change in Plaintiff's job title, responsibilities, pay, or benefits as a result of the Performance Reminder. Plaintiff does not dispute the policy, his violation of the policy, or the lack of material changes as a result of the Performance Reminder.

While FedEx has briefed the issue of whether the Performance Reminder constitutes an adverse employment action, Plaintiff does not raise this issue in his Complaint and does not address the merits of this assertion in his Response to the Motion for Summary Judgment. In any event, the Court RECOMMENDS that a minor reprimand of this nature is not sufficient as a matter of law to constitute an adverse employment action under Title VII or THRA. *See Reid v. Madison County, Tennessee*, 173 F.3d 856 (6th Cir. 1999). Thus, the Court further RECOMMENDS that Plaintiff cannot establish a prima facie case of racial discrimination under Title VII or THRA based upon the issuance of the January 24, 2011 Performance Reminder.

Ultimately, the Magistrate Judge has concluded that Plaintiff has not raised any genuine issues of material fact to sustain his Title VII or THRA claims with respect to the June 7, 2010 Warning Letter, the January 20, 2011 TRW assignment, or the January 24, 2011 Performance Reminder. Thus, the Magistrate Judge RECOMMENDS that FedEx's Motion for Summary Judgment on Plaintiff's Title VII and THRA claims be GRANTED.[9]

---

[9] FedEx has also asserted that Plaintiff cannot demonstrate that he was treated differently than similarly situated non-minority employees for the same or similar conduct. As Plaintiff has already failed to demonstrate a genuine issue of material fact exists as to whether Plaintiff was subjected to an adverse employment action and thus has failed to establish his prima facie case, the Magistrate Judge RECOMMENDS that the District Court need not consider the remaining

*B. Hostile Work Environment*

Plaintiff claims that he experienced a hostile work environment during his GFTP meeting with management regarding his appeal of his January 24, 2011 Performance Reminder for unsatisfactory attendance. In order to establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must demonstrate as follows: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and, (5) the existence of employer liability. *Newman v. Federal Exp. Corp.*, 266 F.3d 401, 405 (6th Cir. 2001) (quoting *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

To establish a genuine issue of material fact in the absence of direct evidence of discriminatory statements, a plaintiff must put forth evidence of racially based harassment. *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 Fed. Appx. 620, 626-67 (6th Cir. 2010). "Conduct that is not severe or persuasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview." *Thompson*, 372 Fed. Appx. at 326 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). Actionable harassment exists only if "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21.

In the instant case, Plaintiff vaguely alleges that placing him in the TRW program created a hostile work environment. Plaintiff has not articulated why he believes this determination was

---

elements of the prima facie case.

racially motivated, and "[m]ere personal beliefs, conjecture and speculation are insufficient" to rise to the level of a hostile work environment. *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). On the contrary, FedEx avers—and Plaintiff admits—that he was placed on the TRW assignment to allow him to maintain his income within his medical restrictions due to his diagnosis with vertigo. The TRW assignment only prohibited Plaintiff from driving DOT vehicles and the forklift out of safety concerns, but it did not otherwise alter Plaintiff's job duties. Given the undisputed and well documented basis for FedEx's decision to place Plaintiff on the TRW assignment and the lack of any direct or indirect evidence supporting Plaintiff's contention that this decision was made because of his race or that the work environment was objectively hostile, the Magistrate Judge RECOMMENDS that FedEx's Motion for Summary Judgment on Plaintiff's claim for hostile work environment be GRANTED.

### C. FMLA

FedEx asserts that Plaintiff's claim for FMLA interference must fail as a matter of law because Plaintiff was not an eligible employee under FMLA. FMLA regulations require that, to be an eligible employee, the employee work 1,250 hours in the twelve month period immediately preceding the commencement of the leave. 29 C.F.R. § 825.110. While Plaintiff attempted to raise a dispute regarding whether he met this requirement, the Court has already concluded that the evidence he presented was inadmissible hearsay that could not be considered on a motion for summary judgment. Accordingly, Plaintiff has failed to raise a genuine issue of material fact as to the number of hours actually worked during the previous twelve-month period. Thus, the Court RECOMMENDS that FedEx's Motion for Summary Judgment on Plaintiff's FMLA claim be GRANTED as a matter of law.

### D. *Rule 56(d) Discovery Request*

Finally, Plaintiff requests in his Response, pursuant to Rule 56(d)[10] of the Federal Rules of Civil Procedure, that either FedEx's Motion for Summary judgment be denied because Plaintiff does not have sufficient discovery to oppose it, or that Plaintiff be permitted to take two additional depositions of unspecified persons before the Court rules upon the motion. Plaintiff asserts that, until these "outstanding critical discovery matters" are resolved, Plaintiff has not had a "full opportunity" to obtain the facts necessary to oppose the instant motion.

Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may either "defer considering the motion or deny it," "allow time to obtain affidavits or declarations or to take discovery," or "issue any other appropriate order." Fed. R. Civ. P. 56(d). "Rule 56(d) recognizes that there are instances when a party lacks the necessary facts to properly contest a summary judgment motion. However, the party must at least specify what information is missing." *CareToLive v. FDA*, 631 F.3d 336, 345 (6th Cir. 2011); *see also Ironside v. Simi Valley Hospital*, 188 F.3d 350, 354 (6th Cir. 1999); *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998). Plaintiff has not specified what he seeks to obtain from further discovery, including the identity of the witnesses he proposes to depose. Plaintiff has also failed to state how such discovery might allow him to demonstrate that genuine issues of material fact exist.

Furthermore, the deadline for depositions and the final discovery deadline in this case were

---

[10] Plaintiff's Response states that this request is pursuant to Rule 56(f). However, the Advisory Committee Notes to Rule 56 state that, following the 2010 Amendments to Rule 56, Rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)." *Thurmond v. County of Wayne*, 447 Fed. Appx. 643, 648 n.3 (6th Cir. 2011).

17

initially set at March 30, 2012. On the date of the deadline, Plaintiff filed an unopposed Motion to Take Depositions Outside the Discovery Deadline and stated that he wished to depose two key fact witnesses who were not named but were stated to be essential to the prosecution of his case. On April 20, 2012, the District Court granted a limited extension of the discovery deadline permitting Plaintiff to take the two depositions of his key fact witnesses by May 25, 2012. As Plaintiff has never named either the witnesses that were the subject of the requests for extension of the discovery deadline or the witnesses that are the subject of the Rule 56(d) request, the Court cannot be certain if they are the same individuals or not. However, Plaintiff was either required to have taken these depositions by March 30, 2012 or by May 25, 2012. The instant motion was not filed until July 20, 2012. Thus, in addition to failing to state grounds for the Rule 56(d) motion, Plaintiff has also failed to demonstrate that his failure to comply with the deadlines was due to excusable neglect pursuant to Rule 6(b)(1)(B). Accordingly, the Court RECOMMENDS that Plaintiff's requests pursuant to Rule 56(d) be DENIED.

**DATED** this 15th day of January, 2013.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**